BROWNE v. KING et al. (No. 5873.) *

(Court of Civil Appeals of Texas. San Antonio. June 6, 1917. Rehearing Denied July 2, 1917.)

1. MORTGAGES ☞137—MORTGAGOR'S TITLE.
A mortgage or deed of trust is but a security for the debt; the title remaining in the mortgagor, subject to be divested by foreclosure.
[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 270–276.]

2. MORTGAGES ☞274—FORECLOSURE—NECESSARY PARTIES.
Where the deed from the mortgagor, subsequent to the execution of the mortgage and prior to its foreclosure, was at once recorded, the rights of parties holding under such deed could be divested in the foreclosure proceedings only if they were made parties.
[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 718–724, 728.]

3. PRINCIPAL AND AGENT ☞190(1)—POWER OF ATTORNEY—TITLE OF AGENT AND RIGHT TO RECOVER—BURDEN OF PROOF.
In action to recover land, in which intervener claimed interest under power of attorney from plaintiff, who had the record title, it was necessary for intervener to prove, not only good record title in plaintiff, which intervener might have recovered, but for·a settlement between plaintiff and defendant, but that defendant had not perfected title to the land under a recorded deed, or by 10 years' adverse possession, as pleaded by defendant.
[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 718.]

4. PRINCIPAL AND AGENT ☞97—POWER OF ATTORNEY — EFFECT AS CONVEYANCE TO AGENT.
A power of attorney to bring suit for certain land, agreeing that the attorney should have, for his services, "one-half of the amount of land so recovered and one-half of the proceeds of any and all sales," etc., did not convey one-half the land, but merely· an interest in the proceeds.
[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 344–376.]

5. PRINCIPAL AND AGENT ☞97—POWER COUPLED WITH INTEREST.
Where an agent is authorized to sue for land, or to sell it, and to have a share out of the proceeds or the property recovered for his services, his powers are not coupled with an interest, and the authority may be revoked at the principal's will, even though, by the agreement, declared to be exclusive and irrevocable.
[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 344–376.]

6. ASSIGNMENTS ☞3—RECORD—STATUTE.
Rev. St. 1911, art. 6833, as to record of transfers of judgment, has no application to a cause of action on which suit has not been filed.
[Ed. Note.—For other cases, see Assignments, Cent. Dig. § 5.]

7. PRINCIPAL AND AGENT ☞183(1)—POWER OF ATTORNEY—EFFECT OF COMPROMISE SETTLEMENT—LIABILITY OF DEFENDANT FOR ATTORNEY'S SHARE OF "CHOSE IN ACTION."
Where an attorney was employed to institute suit to recover certain land, for which he was to receive one-half of the amount of land recovered or one-half of the proceeds, and his principals compromised the suit, defendant was not liable for the attorney's proportionate share of the amount of the compromise, since the transfer was not one of a chose in action, but of an interest in land to be recovered, or the money for which it might be sold, for a chose in action is a right to damages, arising either from the commission of a tort, the omission of a duty, or the breach of a contract, and, while a right or a suit for damages for personal injuries would be a chose in action, a right to land would not be a chose in action; a chose in action being an intangible or incorporeal right, and not including a right to real estate.
[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 691, 697–699.
For other definitions, see Words and Phrases, First and Second Series, Chose in Action.]

8. CONTRACTS ☞108(2) — VALIDITY — AGREEMENT NOT TO COMPROMISE CLAIM.
A contract by litigants with their attorney not to compromise a lawsuit is against public policy, and null and void.
[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 498–503, 505, 507–511.]

Appeal from District Court, Nueces County; W. B. Hopkins, Judge.

Action by Dimas F. Acebo and another against Mrs. H. M. King and others; W. H. Browne, intervening. From judgment for defendants, intervener appeals. Affirmed.

J. C. Scott, of Corpus Christi, and P. M. Young, of Marshall, for appellant. Joseph K. Wells, Jas. B. Wells, and Harbert Davenport, all of Brownsville, for appellees.

FLY, C. J. This suit was instituted by Dimas F. Acebo and Joseph A. Acebo against Mrs. H. M. King to recover an undivided in-

terest of 1,044.86 acres of land out of the "Rincon de Boveda" and "Rincon del Grullo" grants of land, now in Kleberg county, but when in Nueces county. On July 19, 1913, the Acebos conveyed the and to Mrs. King, and thereby settled and compromised the suit. We are led to infer that for some reason, perhaps because the court was not in session, the cause was not dismissed, and on December 31, 1913, appellant filed what is denominated a "plea of intervention," in which it was alleged that appellant owned an interest in the land by virtue of a power of attorney coupled with an interest, executed to him by the Acebos, which empowered him to sue in their names for the land, and that he had employed counsel and had the suit instituted, which they had fraudulently, and with intent to deprive him of his interest in the land, compromised without the knowledge or consent of appellant or his counsel, and had conveyed the land to Mrs. H. M. King. He prayed for damages in the sum of $16,978.97, one-half of the value of the land, and for $941.40, the rental value of one-half of the land, and the foreclosure of a lien on the same, as against the Acebos, and for one-half the land as against Mrs. King. A verdict was instructed for appellees, and judgment rendered thereon.

Domingo Rotge is the common source of title, Mrs. King claiming through a deed of trust executed by Domingo Rotge to R. W. Stayton, trustee, to secure a promissory note for $3,000, given by Rotge to Mrs. King on October 17, 1889; said deed of trust being given on the land in controversy. On December 12, 1894, Mrs. King obtained a judgment for her debt and a foreclosure of her lien against Rotge, and the land was regularly sold under the judgment, and was bought by the Milmo National Bank for $4,-822, and a deed duly executed by the sheriff and duly recorded. A special warranty deed was made by the bank to Mrs. King on May 19, 1897, and was duly recorded. On July 18, 1913, Dimas F. Acebo and Joseph A. Acebo conveyed a one-half interest in the land to Mrs. King, the recited consideration being $4,500, and the deed was duly recorded.

Appellant showed that on September 1, 1891, about two years after he had executed the deed of trust to Mrs. King, Domingo Rotge executed a deed to the same land, consisting of 1,044.86 acres, to Jose Acebo, which was duly recorded. That deed was made subject to a deed of trust in favor of Mrs. H. M. King for $3,000. Jose Acebo died, leaving a will bequeathing to his wife, Annie K. Acebo, all of his estate. The will was duly probated; the widow being appointed independent executrix. On September 20, 1907, Mrs. Annie K. Acebo executed a deed, conveying to Joseph A. Acebo and Dimas F. Acebo the 1,044.86 acres of land conveyed by Rotge to Jose Acebo. In September, 1907, the last-named parties execut-

ed to W. H. Browne, appellant herein, a power of attorney giving him authority, in connection with the land in controversy, and providing for his compensation as follows:

"And we hereby authorize and empower the said Wm. H. Browne, for us and in our name, and as our agent and attorney in fact, whenever and as often as in his judgment it may seem advisable, to employ counsel, and institute suit or suits for the protection of our interests and title in and to said property, or any part thereof, and also to institute any suit or suits that may be necessary or requisite against adverse claimants, if any, or to remove clouds, if any, from our title to same, or any part thereof, or to effect a partition, or to agree on any amicable partition of said property, and to sign all necessary deeds, contracts, and instruments. He is hereby authorized to lease all or any part of said property, for such time, and on such terms, as he may desire. The said Wm. H. Browne is empowered for us and in our name, as our agent and attorney in fact, to sell all or any part of the aforesaid property, with or without general warranty of title and on such terms as he deems best; we hereby giving and granting unto our said agent and attorney in fact the sole and exclusive right to sell our said interests, and to perform and exercise all the rights and powers that we, as owners, might or could perform, if acting for ourselves, whether in making a sale thereof, or in making other disposition of the same, or doing anything else, or making any contract, in regard thereto. In consideration of the services rendered and to be rendered by the said Wm. H. Browne in effecting recovery of our said property, or selling or partitioning of same, or in otherwise representing and acting for us, in the exercise of the powers herein granted, we hereby grant and give unto the said Wm. H. Browne, his heirs and assigns, one-half of the amount of land so recovered, and one-half of the proceeds of any and all sales that may hereafter be made, and one-half of all moneys recovered as damages, he to retain his said one-half and deliver the other one-half to us, our heirs or assigns."

This suit was instituted by an attorney employed by appellants, and while the same was pending Joseph A. Acebo and Dimas F. Acebo conveyed the land to Mrs. King. Appellant claims a half interest in the land or its value through the power of attorney.

[1, 2] When Rotge executed the deed of trust to Mrs. King, the legal title to the land remained in him, and was conveyed by him to Jose Acebo by his deed. A mortgage or deed of trust is but a security for the debt; the title remaining in the mortgagor, subject to be divested by foreclosure. Wright v. Henderson, 12 Tex. 43; Pratt v. Godwin, 61 Tex. 331; Stephens v. Motl, 82 Tex. 81, 18 S. W. 99; Wilkins v. Bryarly, 46 S. W. 266. The land was not sold by the trustee, but the instrument was treated as a mortgage and the lien given by it foreclosed. The judgment obtained by Mrs. King against Rotge, foreclosing her mortgage, did not affect the title acquired by Jose Acebo through the deed made by Rotge subsequent to the execution of the mortgage and prior to its foreclosure, and which deed was at once recorded. In order to divest the Acebos of their rights in the land, it was necessary to make them parties to the foreclosure proceedings. That was not done. Bradford v. Knowles, 86 Tex.

505, 25 S. W. 1117; Thompson v. Robinson, 93 Tex. 165, 54 S. W. 243, 77 Am. St. Rep. 843; Davis v. Lanier, 94 Tex. 455, 61 S. W. 385; Brown v. Cates, 99 Tex. 133, 87 S. W. 1149. It follows that, whatever title to the land that the Acebos had when the mortgage was foreclosed, they retained afterwards. In other words, they held the legal title to the land before the foreclosure of the mortgage lien, and they held it afterwards unaffected by the foreclosure.

[3] It appears from the statement of facts that Mrs. King pleaded limitation of three, five, and ten years in this case before the compromise was made and a deed executed to the land by the Acebos to Mrs. King. No effort was made by appellant to show that Mrs. King did not have title to the land by limitation, although it had been conveyed to her by the Milmo National Bank ten years before this suit was instituted. Appellant's right to the land, if he had any, was dependent on proof that the title to the land was in the Acebos, for in the power of attorney nothing was conveyed to him except a part of what he might recover. If he had any right to recover at all, it would undoubtedly rest upon proof that the Acebos had not only the record title to the land, but that Mrs. King had not perfected title to the land under a recorded deed or by ten years' adverse possession. He testified that the land was fenced, and that there had been a fence "there for years and years," and that the fence belonged to Mrs. King. Appellant should have proved that he would have recovered the land, but for the compromise, and a good record title did not prove that fact. Undoubtedly it was incumbent upon appellant to prove these facts, if he could recover the land at all upon his allegations.

[4, 5] There was no conveyance by the Acebos to appellant of a part of the land, but it was clearly stated in the power of attorney that he should have, in consideration of his services, "one-half of the amount of land so recovered, and one-half of the proceeds of any and all sales that may hereafter be made, and one-half of all moneys recovered as damages." There was no conveyance of one-half of the land. It was an interest in the proceeds, and not in the land itself, that was conveyed. Where an agent is given authority to sue for land, or to sell it, and is to have a share out of the proceeds or the property recovered for his services, his powers are not coupled with an interest, and the authority may be revoked at the will of the principal, even though by the terms of the agreement it was declared to be exclusive and irrevocable. Mechem on Agency, § 586; Taylor v. Burns, 203 U. S. 120, 27 Sup. Ct. 40, 51 L. Ed. 116. In the case cited it was contended that the use of the word "sell," in the power of attorney, showed a conveyance of the property itself. The Supreme Court said:

"While it may be conceded that the meaning and scope of the instrument are not perfectly clear, yet it seems more reasonable to hold that it was simply a grant of authority to Taylor to 'sell and negotiate' the mines, and not also a transfer to him of the title to the property. As such an instrument it was subject to revocation. It was not a power of attorney coupled with an interest. 'By the phrase "coupled with an interest" is not meant an interest in the exercise of the power, but an interest in the property on which the power is to operate.' * * * Now, as we construe this contract, Taylor was to receive, in case he made a sale, seven-eighths of the price in excess of $45,000—that is, he was to be paid for making the sale. It was an interest in the exercise of the power, and not an interest in the property upon which the power was to operate."

The language of the power of attorney showed that any benefits from the lands to appellant depended on the acts of appellant and were matters of the future. There was no conveyance of the land. Taylor v. Taul, 88 Tex. 665, 32 S. W. 866.

Appellant, in his plea in intervention, does not claim that one-half of the land was conveyed to him, but—

"that under and by virtue of said power of attorney, and by his accepting the same and assuming and entering into and upon the discharge of the duties and obligations thereof, as hereinbefore shown, this intervener acquired an interest in the undivided one-half of all of said undivided land, sought to be recovered by plaintiffs in this suit. And plaintiffs were entitled to and would have recovered said lands from the defendant, Henrietta M. King, and thereupon this intervener would have been entitled to an undivided one-half of all of such lands or portions thereof which plaintiffs so recovered, and also an undivided one-half of all the rents of such lands."

If one-half the land had been conveyed by the Acebos to appellant, his right to recover would not be affected by their deed to Mrs. King, and he could still recover the land from her. He does not allege or prove any claim against Mrs. King, but bases his claim on a breach of contract on the part of the Acebos. The suit was prosecuted by the Acebos in their own name, the allegations being that they owned the land, and in his plea appellant alleged that the suit was instituted to recover the land for the Acebos; that he had instituted the suit and was representing the interests of the Acebos. If he was entitled to anything, it was one-half of the amount received by the Acebos from Mrs. King. There is nothing in the pleadings or testimony that tends to fix any liability on Mrs. King. In his brief, appellant does not seek to recover a moneyed judgment against the Acebos on a quantum meruit for his services, nor for one-half of what they received for the land, but the only relief that he asks from this court is a judgment for one-half of the value of 1,044.86 acres of land, or the land itself, as against Mrs. King.

[6] The cases cited by appellant, dealing with personal injury suits, based upon article 6833, Rev. Stats. of Texas, have no applicability to cases like the one now before this court. That article has no application to a cause of action on which suit has not been filed. Railway v. Wooten, 10 Tex. Civ. App.

54, 30 S. W. 684; Railway v. Miller, 21 Tex. Civ. App. 609, 53 S. W. 709; Railway v. Winton, 27 Tex. Civ. App. 503, 66 S. W. 480. Mrs. King had no actual notice of any rights that appellant had in connection with the land. He was not, so far as she knew, connected with the suit for the land, and unless the record of the power of attorney six years before the compromise was made was constructive notice, she had no notice of his connection with the land. He had made no demands upon Mrs. King for the land, and had no connection whatever with the suit, so far as was known to any one except the counsel he had employed, and counsel was to be paid by the Acebos. If he had performed any service in connection with the land, or had any connection with the suit, the record of the power of attorney did not disclose it. A perusal of the power of attorney would not have disclosed to Mrs. King that appellant had instituted the suit or had any interest in it, and she was not called upon to inquire as to whether the Acebos had a right to sell their land. Appellant is not an attorney, and did not appear in the suit in any manner. There was no evidence tending to show that Mrs. King knew that appellant was prosecuting the suit. The record did not supply notice of that fact.

[7] The opinions holding that defendants settling personal injury or death suits, with notice of assignment of a part of the chose in action, will be responsible to the attorney prosecuting the suit, on a compromise with the client, for his proportionate share of the amount of the compromise, are not applicable to this case. A chose in action is a right to damages, arising either from the commission of a tort, the omission of a duty, or the breach of a contract. A right or a suit for damages for personal injuries would be a chose in action, but a right to land would not be a chose in action. The chose in action is an intangible or incorporeal right and does not include a right to real estate. The transfer in this case was not one of a chose in action, but of an interest in land to be recovered, or the money for which it might be sold. Cincinnati v. Hafer, 49 Ohio St. 60, 30 N. E. 197. We have seen no case carrying the doctrine asserted by appellant to the extent of holding that a defendant would be liable for any part of a compromise sum to the assignee of an interest in the cause of action. None of them has ever been extended beyond choses in action. Railway v. Ginther, 30 Tex. Civ. App. 161, 70 S. W. 96, Id., 96 Tex. 295, 72 S. W. 166.

[8] If, as contended by appellant, the Acebos had contracted not to compromise the lawsuit, such contract was against public policy and null and void. They had the absolute right to compromise the suit and make a conveyance of the land. If appellant had title to one-half of it, their conveyance did not affect it; and if he had merely a transfer of an interest in the cause of action, then his recourse is against the Acebos for his part of the money for which the land was sold, or for the value of the land. The sole and exclusive right to sell the property did not deprive the owners of the right to sell.

Much of the discussion herein might well have been pretermitted altogether, because the crucial point in the case is: Does the power of attorney absolutely convey to appellant one-half of the 1,044.86 acres of land, or was it merely a promise, in consideration of the performance of certain services, to convey the land to appellant upon the happening of certain events? If it was a conveyance of one-half of the land, appellant should have recovered; but if it was not, he should not have recovered. We conclude, as hereinbefore stated, that no land was conveyed by the power of attorney, and as appellant sought only to recover the land from Mrs. King he failed to make out a case against her. Appellant did not pray for a moneyed judgment against Mrs. King, and consequently any reference to that subject might have been omitted. He does not seek a judgment against the Acebos for half of the money received by them for the land, but in his pleadings, and in his brief prays for a recovery of one-half of the value of the 1,044.86 acres of land.

The judgment is affirmed.