BOWLES et al. v. BRYAN. (No. 375–3428.)*

(Commission of Appeals of Texas, Section A. Jan. 24, 1923.)

1. **Principal and agent ⬤⟿37—Power of attorney, coupled with interest, cannot be revoked.**

A power of attorney, coupled with an interest, cannot be revoked by the grantor of the power.

2. **Vendor and purchaser ⬤⟿245 — Whether purchaser of land in which attorney had interest under power of attorney for services knew of performance of such services held for jury.**

Where an attorney, acting under a recorded power of attorney giving him an interest in certain realty which he sought to recover for his client, had acted for four years and at two trials in the district court, the question whether defendants, who purchased the land from his client, had actual notice of his claim that he was performing his part of the contract contained in the power of attorney, held for the jury.

3. **Vendor and purchaser ⬤⟿240—Petition of intervener claiming interest under power held sufficiently to charge notice of part performance thereunder.**

Where plaintiff, in a suit to recover an interest in land, sold his interest to defendants in such suit, and plaintiff's attorney, who had been prosecuting the suit under a power of attorney giving him an interest in the subject-matter, intervened, allegations in the intervener's petition that he and his associate had filed suit and continuously prosecuted it held a sufficient charge that defendants had actual notice that intervener had, in part at least, performed his duties as contemplated by the power of attorney.

4. **Husband and wife ⬤⟿274(1)—Deed to survivor of marital community holding title by limitations held not to change status of community.**

Where a marital community had title by limitation to land occupied by it, that the survivor of the community afterwards received a deed to the same land did not change its status as against the heirs of the deceased marital partner, holding by inheritance the legal title by limitation.

5. **Vendor and purchaser ⬤⟿239(6)—Innocent purchaser not protected against title acquired by limitation.**

An innocent purchaser is not entitled to protection against a title acquired by limitation.

6. **Appeal and error ⬤⟿1094(1) — Supreme Court will not review assignments of error as to overruling of assignments in Court of Civil Appeals, presenting matters sustained by great weight of evidence.**

The Supreme Court has no jurisdiction to review an assignment of error that a certain assignment was overruled in the Court of Civil Appeals, although presenting matters sustained by the great weight of evidence.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Action by Deck Martin and Charlie Rodgers against J. L. Ross. A judgment for Deck Martin was affirmed by the Court of Civil Appeals (128 S. W. 718), but reversed and remanded by the Supreme Court (104 Tex. 558, 140 S. W. 432, 141 S. W. 518), and, upon the death of defendant, Frank R. Bowles, executor, and others were substituted; E. P. Bryan intervening. Judgment for defendants was rendered after setting aside a verdict, but reversed by the Court of Civil Appeals (214 S. W. 524), and on application the Supreme Court (235 S. W. 522) granted a writ of error because of conflicting decisions. Judgment of Court of Civil Appeals affirmed.

Harry P. Lawther, of Dallas, for plaintiffs in error.

E. P. Bryan, of Dallas, for defendant in error.

RANDOLPH, J. This suit was originally instituted by Hart and Bryan, as attorneys for Deck Martin and Charlie Rodgers, against J. L. Ross. The case was tried in the district court of Dallas county, where judgment was rendered for Deck Martin, and eliminating Charlie Rodgers for reasons not necessary to discuss here. On appeal to the Court of Civil Appeals the case was affirmed. Ross v. Martin, 128 S. W. 718. On hearing in the Supreme Court, that court reversed the case, and remanded it for trial as to Deck Martin only. 104 Tex. 558, 140 S. W. 432, 141 S. W. 518. The defendant, Ross, having died, his executor and heirs were made parties defendant. The defendants having purchased his interest in the subject-matter of the litigation from Deck Martin, Bryan, claiming the interest of Hart, intervened in the suit, claiming two-thirds undivided interest in the land in suit under and by virtue of the power of attorney executed by Deck Martin to Hart and Bryan. The trial court, after hearing the evidence, submitted the case to the jury, and the jury rendered answers to special issues submitted to them. Both intervener and defendants presented their motions for judgment; the defendants' motion being a motion for judgment notwithstanding the verdict. The trial court set aside the verdict of the jury, and rendered judgment for the defendants. On

appeal, the Court of Civil Appeals at Amarillo reversed and remanded the case, and on application the Supreme Court (235 S. W. 522) granted a writ of error on the appearance of conflict between the decision of the Amarillo court and the Court of Civil Appeals for the Fourth District in the case of Browne v. King, 196 S. W. 884.

Terrell Martin and Seely Martin, husband and wife, were living on a little tract of land in 1872, that was needed for the right of way for the Houston & Texas Central Railway Company. Capt. W. H. Gaston, who was interested in securing the right of way, traded them the tract of land in controversy for the tract they were living on. This was in 1872 or 1873. Gaston did not execute a deed to them at this time, but it appears from his evidence that he turned the property in controversy over to them, and about the same time they put a house on it and moved into the house. A good many years after this, Terrell Martin having died, Gaston executed and delivered a deed to the property in controversy, dated the 15th of April, 1887, recorded August 8, 1887, to Seely Martin. The house on this land appears to have been destroyed by fire in 1886. Seely Martin's estate was administered at her death, and this property was sold to the vendor of Ross, the original defendant herein, by her administrator.

Deck Martin is shown by the evidence to have been the son of Sim Martin, who was the son of Terrell and Seely Martin. Terrell Martin died before his son Sim Martin. On the death of Terrell Martin, Sim Martin inherited from him, and the plaintiff Deck Martin, as heir of Sim Martin, is entitled to recover the interest in the property in controversy inherited by Sim Martin, unless his right to do so is defeated by the matters and things set up by defendants herein, plaintiffs in error. This right of recovery having been transferred to the defendants by him, during the pendency of the suit, the only questions to be considered by us are those relating to, affecting, and controlling the suit of Bryan, the intervener, wherein he claims a two-thirds undivided interest in Deck Martin's share of the land in controversy by reason of his power of attorney from Deck Martin and his claim of part performance of his part of contract provided in the power of attorney.

The power of attorney, after setting out the appointment of Hart and Bryan as attorneys in fact, and those things that such attorneys in fact were authorized to do, proceeds as follows:

"And whereas, our said agents in fact, J. J. Hart and E. P. Bryan, will be at considerable trouble and expense in finding out and removing the cloud or clouds from our said land, therefore, as remuneration to them, we hereby give, grant, sell and convey unto them, the said J. J. Hart and E. P. Bryan, two-thirds (⅔) un-divided interest of, in and to any and all lands, money or other valuables so recovered for us. Said land shall be sold and money divided or they may be partitioned after being cleared up of all adverse claims, whatsoever as to our said attorneys shall seem best."

The first assignment of error presented in the application for writ of error raises the question of the failure of the Court of Civil Appeals to sustain or even to rule on the defendants in error's assignments of error presented in that court.

Our disposition of the case on other issues renders it unnecessary for us to pass upon this assignment.

Plaintiffs in error's second assignment of error is as follows:

"Second assignment. The court erred in permitting the intervener, Bryan, over defendant's objection, to introduce in evidence upon the trial hereof the power of attorney dated April 15, 1905, from Deck Martin and Charlie Rodgers to J. J. Hart and E. P. Bryan, because the evidence in the case was undisputed that whatever title Deck Martin may have had in the property in controversy was conveyed by him to J. L. Ross in June, 1909. The suit as it stands is one filed by the intervener, E. P. Bryan, on the 7th day of March, 1913, claiming an undivided two-thirds interest in the interest of Deck Martin in the property in controversy by virtue of the following language contained in said power of attorney: 'And whereas, our said attorneys in fact, J. J. Hart and E. P. Bryan, will be at considerable trouble and expense in finding out and removing the cloud or clouds from our lands, therefore as remuneration to them, we hereby grant, sell and convey to them, the said J. J. Hart and E. P. Bryan, a two-thirds undivided interest of, in and to any and all lands, money or other valuables so recovered for us; said land shall be sold and money divided or they may be partitioned after being cleared up of all adverse claims whatsoever as to our said attorneys shall deem best.' This language conveys to the said Hart and Bryan no interest whatever in the subject of the power, but only conveys an interest in whatever should be obtained by the exercise and execution of the power. At the time of this trial, no lands, money or other valuables had been recovered for Deck Martin by Hart and Bryan; consequently the said Bryan had no such interest in the lands in controversy as could form the ground for a suit in trespass to try title, and the court erred upon the trial hereof in permitting the said Bryan to introduce the said power of attorney and conveyance as evidence of any title in him, as is shown by defendant's bill of exceptions No. 2."

[1] The general rule is that a power of attorney, coupled with an interest, cannot be revoked by the grantor of the power. Daugherty v. Moon, 59 Tex. 399. Under the facts in this case the sale by Deck Martin to defendants was an attempt at revocation. Under the terms of the power of attorney here being considered, it is clear that it was an executory contract, and was not effective

on delivery as a deed. The interest was a future one, to be vested in Bryan on recovery of the property. If this was the present status of the question, the case of Browne v. King (Tex. Civ. App.) 196 S. W. 884, and (Tex. Sup.) 235 S. W. 522, would be decisive of it. However, Chief Justice Phillips in the hearing before the Supreme Court discusses that question from the standpoint of there having been no performance or part performance on the part of attorney in fact brought home to the knowledge of Mrs. King. The facts in that case as recited by the Supreme Court are:

"The suit of the Acebos against Mrs. King for the land was brought by an attorney employed by Browne. Browne examined the records; furnished the attorney an abstract of title; went personally upon the land twice; and did such other things for the preparation of the trial as his attorney directed. The suit, however, was wholly in the name of the Acebos. It did not disclose any interest of Browne. Mrs. King in acquiring the title of the Acebos had no notice, so far as the record shows, of Browne's connection with the suit or of anything done by him in relation to it or the land. Her notice of any interest held by him in the land was such only as was afforded by the record of the power of attorney given him by the Acebos."

In this case Bryan was record attorney for the plaintiff in the trial court, had represented him for four years at the two trials of the case in the district court in the performance of his part of the contract as provided in the power of attorney. This was done prior to the purchase of Deck Martin's interest by the defendant Ross between the trial in the district court and appeal to the Court of Civil Appeals or pending the appeal to the Court of Civil Appeals. The suit was filed on July 19, 1905, and the deed from Deck Martin to defendant Ross was executed June 2, 1909.

[2] The intervener was entitled to the interest claimed by him in the land in controversy upon proof of Deck Martin's right to recover, if he had not sold to defendant Ross, if the defendants had actual notice of his claim, given them in any way, that he was performing his part of the contract contained in the recorded power of attorney, of which power of attorney they had constructive notice.

Discussing the law as applied to the facts of the case of Browne v. King, supra, Chief Justice Phillips says:

"The instrument executed by the Acebos and given Browne was not effective on delivery as a deed to one-half of the land. It conveyed no present interest. His interest was to be a future one. It was to be in the land when 'recovered,' and then only in consideration of the performance of his part of the contract. Except upon such performance he was to have no interest. Further action on his part was necessary—his recovery of the land for the grantors by the prosecution of a successful suit or amicable partition. There was no grant to him of an interest in the land under its existing status. The grant was an interest in the land 'so recovered,' revealing very plainly that his interest was to be effective only after the successful exercise of his agency. The necessity for future action on Browne's part as the condition for the vesture of any interest in his favor made the contract purely executory. Hazlett v. Harwood, 80 Tex. 508, 16 S. W. 310; Tayler v. Taul, 88 Tex. 665, 32 S. W. 866.

"Browne, himself, recognized that the instrument conveyed to him no present interest, for the suit which he caused to be instituted for the recovery of the land was alone in the name of the Acebos.

"While this is true, the instrument was something more than a mere naked power of attorney. It was a contract on the part of the Acebos to convey to Browne the legal title to one-half of the land upon his performance of the agreement. Such performance by Browne would have vested in him an equivalent equitable interest. After the performance of his agreement in part, the Acebos could not, in breach of their contract, defeat Browne's interest by a refusal to permit him to complete the agreement and a sale of the legal title to their adversary. A purchaser of the legal title under such circumstances, with notice of Browne's equity, would take it subject to his rights. The title of the purchaser with notice would be subordinate to Browne's equitable interest if the latter were able to establish that but for the sale he could and would have perfected that interest.

"But, at best, Browne's right was only an equity; and if fully perfected by his entire performance of the contract could only have amounted to an equitable interest. If it be admitted that at the time of the sale by the Acebos of the legal title to Mrs. King he had done everything required of him under the contract up to that time, and that but for such sale he would have been able to recover the land, yet, if Mrs. King bought the title without notice of his equity, she would be entitled to protection as an innocent purchaser. Mrs. King had constructive notice of the contract when she purchased the legal title. But the contract of itself conferred no equity. Performance by Browne of the agreement was necessary to the creation of his equitable interest, and therefore to affect the legal title in Mrs. King's hands with his interest it was necessary that he establish that she bought with notice of such performance. There was no proof that she had such notice. According to the record she knew nothing of Browne's relation to the suit of the Acebos or of anything he had done in performance of his contract with them. The record of the contract gave her no such notice, and the suit itself in no way disclosed Browne's connection with it."

The power of attorney in this case is clearly such as, by its terms, comes within the class of executory contracts, and it devolved on the intervener to establish the fact that he had performed his part of the contract in whole or in part.

The allegations in the intervener's petition in respect to the performance are as follows:

"That under said power of attorney your petitioner and J. J. Hart filed suit as herein above set out, and has continuously prosecuted same. That thereafter, to wit, on or about the 2d day of June, 1909, the defendants with full knowledge of said power of attorney and to defraud said attorneys out of their fees conspired with the plaintiff herein to defraud said attorneys and defendants procured a deed from plaintiff to the land sued for by plaintiff, being the same land covered by said power of attorney and for which his attorneys, J. J. Hart and E. P. Bryan, were employed to recover, and for which they had filed suit."

[3] While there is no allegation in specific terms that the defendants had notice of the part performance by intervener of his contract of employment, the allegation that he and Hart had filed suit and had continuously prosecuted same, which was required in the power of attorney, we think is a sufficient charge that the defendants had actual notice that Bryan had, in part at least, performed his duties as contemplated by the power of attorney, and, as this suit was for a specific tract of land, his interest was clearly charged under said power of attorney and the allegations in his petition in that particular tract.

It is clear that the intervener had the right to have the question of his part performance, and as to whether or not defendants had notice of it, submitted to the jury. This the trial court defeated by setting aside the verdict of the jury and rendering judgment for defendants without the jury's intervention.

The plaintiffs in error's third assignment presents the question that the trial court erred in admitting in evidence the testimony of W. H. Gaston, who testified that the real consideration in the deed from himself to Seely Martin was an exchange of land made many years before, for the reason that the evidence did not show that at the time J. L. Ross purchased the property in controversy he was informed that the consideration was different from the cash consideration named in the deed, and that parol evidence is not admissible to vary the terms of a written contract.

[4] The Court of Civil Appeals at Amarillo held, substantially, that the plea of innocent purchase cannot prevail against a title by limitation. If this is correct, the question as to whether or not error was committed in permitting the attack on the recited consideration in the deed becomes immaterial. If the evidence showed title by limitation in favor of Terrell and Seely Martin prior to the death of Terrell Martin, thus vesting that title in the community, the fact that the survivor afterwards received a deed to the same land would not change its status as against the heirs of the deceased marital partner, holding by inheritance the legal title by limitation.

The case of Burton's Heirs v. Carroll, 96 Tex. 325, 72 S. W. 581, settles the proposition that a title by limitation is a "full title," and divests the title out of those holding the record title.

[5] That an innocent purchaser is not entitled to protection against a title acquired by limitation is asserted by Judge Williams, then of the Galveston Court of Civil Appeals, in the case of MacGregor v. Thompson, 7 Tex. Civ. App. 32, 26 S. W. 649, and his opinion is so convincing in its reasoning that we here copy from it as follows:

"According to the findings of the court below, the party from whom appellant purchased the land in controversy had the title to it, until it was acquired by another claimant by adverse possession, under the ten years' statute of limitations. After such title by limitation had become complete, the houses and fences, by means of which possession had been evidenced, were burned, occupancy ceased, and there were no vestiges upon the land itself to show that it had ever been occupied. In this condition it remained for about six years, when appellant bought it from the person in whom was the paper title shown by the records, paying a valuable consideration, without notice of the fact of the former possession and of the title thereby acquired, unless it be held that he was bound to take notice of the former history of the land, as to possession of it, which may have been held. The sole question presented in this appeal by appellant is whether or not appellant, as an innocent purchaser, was entitled to protection against the title acquired by limitation, of which he was ignorant when he purchased. When the possession was held for the time prescribed by law, the title of the former owner was destroyed, and that of the possessor, by his adverse possession, became perfect. He had as full ownership in the land as can be held under any other character of title. Rev. Stats., art. 3196. This title was of a character that could not be recorded, and hence the registration laws do not apply. Those laws protect purchasers and creditors against conveyances which could be but are not recorded. It is doubtless the purpose and policy of such laws to furnish means of information to parties buying lands, as to the condition of the titles, and to protect them against all claims of which notice should be found upon, but the existence of which is not disclosed by, the records. But at the same time the law also permits title by adverse possession to exist, concurrently with the registration laws, and provides no means by which notice of such title may be given. The declaration of the statute is, that he who has had the requisite possession 'shall be held to have full title precluding all claims.' Such being the case, can it be true that he must do what no other owner of land is required to do, and remain constantly in possession, in order to maintain his right against the very title which his adverse possession has destroyed, in the hands of a purchaser from him through whose laches it has been lost? To so hold would be to deny to him the 'full title precluding all claims' which is given by the statute, for it would make his title dependent on his constant possession and

upon the acts of third parties. It is true, that the holder of an unrecorded deed may have full title, as perfect as that which results from adverse possession, and that such title may nevertheless be defeated by a sale from his vendor to an innocent purchaser; but the defeat of his title results from the law which visits this consequence upon him for his .failure to do what it permits and requires him to do. There is no such exaction made of one who holds a title which cannot be registered."

If this is the law, then it naturally follows that the introduction of the deed and the evidence to explain the real consideration presents an immaterial issue. Such deed, in any event, could not have operated in any way to change the status of the title by limitation; hence the admission of the evidence varying the consideration named in the deed was harmless error, if error, which we do not decide.

Plaintiffs in error's fourth assignment of error assigns as error the action of the Court of Civil Appeals in overruling their third cross-assignment of error, giving five "grounds" upon which error is predicated. The grounds of error are based upon the propositions that the undisputed evidence or the overwhelming weight of evidence was in favor of or against' certain propositions. By undisputed evidence we understand that there was *no* evidence establishing certain conclusions of the Court of Civil Appeals, and that the *great weight* of the evidence established or controverted certain propositions. From an inspection of the statement of facts we do not think it can be said that there was no evidence establishing the contrary of the propositions in this assignment; hence we overrule this contention.

[6] Plaintiffs in error's contention that the overruling of this assignment was error, because said assignment presented matters that were sustained by the great weight of evidence, is a matter that is not within the jurisdiction of the Supreme Court to review.

This case has been pending in court for nearly 18 years, and we would be glad to terminate it. But the trial judge had the right to set aside the verdict of the jury as being based on insufficient evidence. That question was one that came within his jurisdiction. While he had the right to set aside the verdict, and, under the ruling herein, had no power to render judgment, the judgment as rendered by him not being supported by the verdict of the jury, the Supreme Court is not authorized, in the absence of a jury verdict, to render any judgment but one of reversal, and that the case now before the court shall again be tried by a jury in Dallas county.

We therefore recommend to the honorable Supreme Court, as to the disposition of the case, that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment recommended in the .report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.