**ALLODIAL LIMITED
PARTNERSHIP,**
Appellant

v.

**NORTH TEXAS TOLLWAY
AUTHORITY, Appellee.**

No. 05–04–01568–CV.

Court of Appeals of Texas,
Dallas.

Nov. 16, 2005.

James A. Pikl, James A. Pikl, P.C., McKinney, for Appellant.

Clinton Schumacher, Locke Liddell & Sapp LLP, Dallas, for Appellee.

Before Chief Justice THOMAS and Justices WRIGHT and O'NEILL.

## OPINION

Opinion by Justice O'NEILL.

Appellant, Allodial Limited Partnership ("Allodial"), appeals the trial court's order granting appellee's, North Texas Tollway Authority ("NTTA"), motion for summary judgment. Allodial contends in two issues that the trial court erred in finding Allodial did not have standing to bring a cause of action and that the statute of limitations had already expired when Allodial filed suit. We affirm the trial court's judgment.

## BACKGROUND

The subject of this lawsuit is a 2.99 acre tract of land ("the property") situated at the corner of the President George Bush Turnpike ("PGBT") and McCoy Road in Carrollton. Charis Interests ("Charis"), owned the property and also an adjacent 12.384 acre tract. In 1996, Charis conveyed the 12.384 acre tract to the State of Texas ("the State"), but retained the 2.99 acre tract. At the time, the State was contemplating building a state highway through the 12.384 acre tract and alongside the 2.99 acre tract.

Meanwhile, NTTA acquired the main lanes of what was to be the state highway and entered into an agreement with the State and the Federal Highway authority to develop the route as a tollway. As a result, the PGBT was constructed and the westbound service road ran adjacent to the property that is the subject of this case. For safety reasons, the elevation of the service road had to be lowered so that patrons approaching the nearby toll plaza would not have to go downhill sharply. In November of 1999, a retaining wall was built on the service road next to the property to accommodate the change in elevation and to prevent erosion. The westbound service road of the PGBT opened on September 26, 2000, at which time, the retaining wall was substantially complete.

Charis's manager, Tom Staley was told of the plans for the retaining wall on September 22, 1999, when he was contacted by Pat Ellis, an engineer hired by NTTA. Ellis informed Staley that the retaining wall was going to be constructed and asked whether Staley wanted a sound wall constructed between the property and the service road. Staley indicated that a retaining wall would damage the property. Staley also drove by the property "almost every day" for a year during the construction of the PGBT when he would take his children to school.

On August 23, 2002, Charis sold its interest in the property to Allodial. Allodial filed suit in this case on December 31, 2002, alleging inverse condemnation because the land was no longer accessible from the service road due to the change in elevation and the construction of the retaining wall. The trial court granted NTTA's motion for summary judgment because Allodial lacked standing to sue and because the statute of limitations for bringing its claim had run.

## STANDARD OF REVIEW

To prevail on a traditional motion for summary judgment, the movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a (c); *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex.2002). We review the trial court's ruling granting a motion for summary judgment *de novo* and take as true all evidence favorable to the non-movant. *Dickey v. Club Corp. of Am.*, 12 S.W.3d 172, 175 (Tex.App.-Dallas 2000, pet. denied); *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222 (Tex.1999). We resolve any doubts about the existence of a genuine issue of material fact against the

movant. *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

In a no-evidence motion for summary judgment, the movant must specifically state the elements for which there is no evidence. TEX.R. CIV. P. 166a (i). The nonmovant must then bring forth evidence that raises a fact issue on the challenged elements. *Id.* A no-evidence motion for summary judgment is subject to a legal sufficiency standard of review. *Crocker v. Paulyne's Nursing Home, Inc.,* 95 S.W.3d 416, 419 (Tex.App.-Dallas 2002, no pet.).

## STANDING

■ Allodial first claims the trial court erred in granting appellee's motion for summary judgment based on NTTA's allegation that Allodial lacks standing to sue. Generally, a claim for damage to property belongs to the entity who owns the property at the time of the injury. *Abbott v. City of Princeton,* 721 S.W.2d 872, 875 (Tex. App.-Dallas 1986, writ ref'd n.r.e.). Allodial argues its inverse condemnation claim was assigned to it by Charis and directs us to the portion of the "exchange agreement" between Charis and Allodial which "represents and warrants" that:

> Charis shall assign over to Allodial all rights Charis has to any benefits or awards Charis is due from claims or causes of action it has against third parties as they relate to the tracts of land, including but not limited to claims it has against the Texas Department of Transportation, the North Texas Tollway Authority and the City of Carrollton, Texas.

■ To recover on an assigned cause of action, the plaintiff must show that the cause of action being assigned existed and was assigned to the party alleging the assignment occurred. *Esco Elevators, Inc. v. Brown Rental Equipment Co., Inc.,* 670 S.W.2d 761, 764 (Tex.App.-Fort Worth

1984, writ ref'd n.r.e.). The language in the agreement above does not support Allodial's position that it has standing because this language does not reflect a *present* assignment of Charis's rights to Allodial. *Id.; See also Pape Equipment Co. v. I.C.S., Inc.,* 737 S.W.2d 397, 401 (Tex.App.-Houston [14th Dist.] 1987, writ ref'd n.r.e.) (holding that an agreement is not an assignment where there are no present words of transfer).

Despite the language of the contract, Allodial asserts that the exchange agreement was, in fact, a present assignment of rights. It offers the affidavit of Wayne Paul, a trustee for Charis, which explains that, by the terms of the agreement, Charis assigned its rights to any causes of action against NTTA to Allodial. However, when a contract is unambiguous, we must defer to the language of the contract, not the parties' interpretation of that language. *Nicol v. Gonzales,* 127 S.W.3d 390, 394 (Tex.App.-Dallas 2004, no pet.). Accordingly, we determine that the trial court did not err in granting NTTA's motion for summary judgment because Allodial cannot show it has standing to bring an action in this case.

## STATUTE OF LIMITATIONS

■ Even assuming Allodial had standing, summary judgment was proper because the statute of limitations expired before Allodial filed suit in this case. Allodial contends that the statute of limitations applicable to its inverse condemnation claim is ten years, not two years as the trial court found. Allodial argues this is so because its property was "taken" rather than "damaged." We disagree.

■ To be entitled to compensation for inverse condemnation under Article I, Section 17, of the Texas Constitution, the plaintiff must show that their property has

been taken, damaged, or destroyed for public use. *Allen v. City of Texas City,* 775 S.W.2d 863, 864 (Tex.App.-Houston [1st Dist.] 1989, writ denied). Our inquiry into whether property has been "taken" or "damaged" is a question of law. *DuPuy v. City of Waco,* 396 S.W.2d 103, 110 (Tex. 1965).

In a claim for inverse condemnation, a "taking" occurs when property is taken for public use without process or without proper condemnation proceedings. *Allen,* 775 S.W.2d at 864. To recover under this theory, the property owner must establish that: (1) a governmental entity intentionally performed acts; (2) that resulted in a taking of the property; (3) for public use. *City of Abilene v. Smithwick,* 721 S.W.2d 949, 951 (Tex.App.-Eastland 1986, writ ref'd n.r.e.). It is well settled that a "taking" of land under Article I, Section 17, means an actual physical invasion or an appropriation of the land. *Nueces County Drainage and Conservation Dist. No. 2 v. Bevly,* 519 S.W.2d 938, 943–44 (Tex.App.-Corpus Christi 1975, writ ref'd n.r.e.). When property has been "taken," a party is not barred from bringing a cause of action until the ten-year period for acquiring land by adverse possession has expired. *Hudson v. Arkansas Louisiana Gas Co.,* 626 S.W.2d 561, 563 (Tex.App.-Texarkana 1981, writ ref'd n.r.e.); *see also* TEX. CIV. PRAC. & REM.CODE ANN. §§ 16.026(a) (Vernon Supp.2001).

A property is "damaged" when no physical taking has occurred, but its value has been diminished. *DuPuy,* 396 S.W.2d at 108. In cases such as the one before us, where access to the property has been impaired, the property is "damaged," not "taken." *Id.* The Texas Supreme Court explained:

> It is the settled rule in this state that an abutting property owner possesses an easement of access which is a property right; that this easement is not limited to a right of access to the system of public roads; and that diminishment in the value of property resulting from a loss of access constitutes damage.

*Id., citing Powell v. Houston & T.C.R. Co.,* 104 Tex. 219, 135 S.W. 1153, 1155 (1911). When property has been "damaged," a party must bring a cause of action within two years. *Hues v. Warren Petroleum Co.,* 814 S.W.2d 526, 530 (Tex.App.-Houston [14th Dist.] 1991, writ denied); *Hudson,* 626 S.W.2d at 563–64; *see also* TEX. CIV. PRAC. & REM.CODE ANN. §§ 16.003(a) (Vernon Supp.2001).

Despite Allodial's position that its property was "taken," the evidence presented to the trial court showed, at most, that the land in this case was "damaged." Specifically, it showed only that the construction of the retaining wall impeded access to the property, thus diminishing its value; not that any portion of the land was physically appropriated. *See DuPuy,* 396 S.W.2d at 108. Thus, the statute of limitations applicable in this case is two years. *Hues,* 814 S.W.2d at 530; TEX. CIV. PRAC. & REM.CODE ANN. §§ 16.003(a) (Vernon Supp.2001).

Allodial filed suit in this case on December 31, 2002. The record reflects that Charis was notified of the plans for the retaining wall on September 22, 1999, when Ellis contacted Staley. At that time, Staley indicated that a retaining wall would damage the property. Staley testified that he drove by the property virutally every week day during the construction of the PGBT when he drove his children to school. The service road adjacent to the property opened on September 26, 2000, at which time the retaining wall was substantially complete. Even assuming, *arguendo,* that the limitations period began to run on this late date, Allodial's petition was still filed over three months beyond the

limitations period. Thus, summary judgment was proper based on the trial court's finding that the statute of limitations for bringing an action had expired when Allodial filed its original petition.

 Allodial also requested, should we find that its claim is one of damages subsequent to a two-year statute of limitations, that we equitably toll the limitations period because the property was the subject of a condemnation action brought by the City of Carrollton from April 24, 2001, until August 29, 2002. However, Allodial waived its claim for equitable tolling by failing to present it to the trial court. Tex.R. Civ. P. 166a (c).

## CONCLUSION

For the reasons set forth above, we conclude that summary judgment was proper in this case. Allodial did not have standing to bring an action against NTTA for inverse condemnation; and, even assuming it did, the statute of limitations to bring such an action ran before Allodial filed suit. Accordingly, we affirm the trial court's judgment.