ACCEPTED
03-14-00738-CV
6106044
THIRD COURT OF APPEALS
AUSTIN, TEXAS
7/16/2015 5:26:54 PM
JEFFREY D. KYLE
CLERK

# 03-14-00738-CV

In the Court of Appeals
For the Third District of Texas at Austin

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
7/16/2015 5:26:54 PM
JEFFREY D. KYLE
Clerk

## Elness, Swenson, Graham Architects, Inc.,
*Appellant*,

**v.**

## RLJ II-C Austin Air, LP, RLJ II-C Austin Air Lessee, LP, and RLJ Lodging Fund II Acquisitions, LLC,
*Appellees*.

On Appeal from the
200th Judicial District Court of Travis County, Texas
Cause Number: D-1-GN-002325
The Honorable Stephen Yelenosky, Presiding Judge

## REPLY IN SUPPORT OF APPELLANT'S BRIEF

*Attorneys for Appellant*

**MACDONALD DEVIN, PC**
3800 Renaissance Tower
Dallas, Texas 75270
214.744.3300 telephone
214.747.0942 facsimile

**Gregory N. Ziegler**
Texas Bar No. 00791985
GZiegler@MacdonaldDevin.com
**Weston M. Davis**
Texas Bar No. 24065126
WDavis@MacdonaldDevin.com
**Steven R. Baggett**
Texas Bar No. 01510680
SBaggett@MacdonaldDevin.com

*Oral argument requested*

# TABLE OF CONTENTS

**Table of Contents** ..................................................................................i

**Index of Authorities** ............................................................. iii

**Summary** ..............................................................................1

    I.    **The "no net recovery" rule does not apply to credits based on third-party settlements (Issue No. 1)** .................................2

    II.    **RLJ did not receive an assignment of any claims against ESG (Issue No. 2).** ........................................................6

        **A. The PSA did not include an assignment of any causes of action** ........................................................6

        **B. RLJ's alleged, invalid assignment of ESG's contract did not convey pre-existing causes of action** ...................................11

    III.    **RLJ failed to establish evidentiary requisites for admission of the ESG contract (Issue No. 3).** .................................14

    IV.    **ESG did not agree to warrant or "perform" structural engineering services (Issue No. 4).** .................................15

    V.    **The trial court erred in awarding RLJ diminution in value damages because the evidence was legally insufficient (Issue No. 5).** .................................16

        **A. Mr. Hornsby's ipse dixit is not competent evidence** .................16

        **B. RLJ provides no legal basis for the legally insufficient appraisal date** ........................................................17

        **C. Two wrongs don't make a right: RLJ's improper Appraisal Date is not cured by submission of an improper jury question.** ........................................................19

i           

**D. RLJ did not provide required evidence to support the alleged lost market value of the Hotel attributable to ESG**.................21

**E. The determination of lost market value damages requires admissible expert testimony, which RLJ did not provide**.......23

**Prayer** ........................................................................................................24

**Certificate of Service** ...............................................................................25

**Certificate of Compliance** .......................................................................25

915635.1    402/122

# INDEX OF AUTHORITIES

## Cases

*A.D. Willis Co. v. Metal Bldg. Components, Inc..,*
      No. 03-99-00574, 2000 Tex. App. LEXIS 6812
      (Tex. App. Austin Oct. 12, 2000, pet. denied) ................................................3

*Adams v. Great American Lloyd's Ins.,*
      891 S.W.2d 769 (Tex. App.–Austin 1995, no writ) ......................................7

*Allodial Ltd. v. N. Texas Tollway Auth.,*
      176 S.W.3d 680 (Tex. App.–Dallas 2005, pet. denied) ..............................12

*Baroid Equipment, Inc. v. Odeco Drilling, Inc.,*
      184 S.W.3d 1 (Tex. App.–Houston [1st Dist.]
      2010, pet. denied) ...................................................................................... 11

*Barraza v. Koliba,*
      933 S.W.2d 164 (Tex. App.–San Antonio, 1996, writ denied) ...................18

*Barry v. Jackson,*
      309 S.W.3d 135 (Tex. App.-Austin 2010, no pet.) .....................................18

*Birchfield v. Texarkana Mem'l Hosp.,*
      747 S.W.2d 361 (Tex. 1987) ......................................................................17

*Birnbaum v. Swepi LP.,*
      48 S.W.3d 254 (Tex. App – San Antonio 2001, pet. denied) .......................7

*Browne v. King,*
      196 S.W. 884 (Tex. Civ. App.–San Antonio 1917) ......................................7

*Buccaneer Homes of Ala., Inc. v. Pelis,*
      43 S.W.3d 586 (Tex. App.–Houston [1st Dist.] 2001, no pet.) ......................4

*Ceramic Tile Int'l, Inc. v. Balusek,*
      137 S.W.3d 722 (Tex. App.–San Antonio, 2004, no pet.) ............................9

*C.M. Asfahl Agency v. Tensor, Inc.,*
135 S.W.3d 768 (Tex. App.–Houston [1st Dist.]
2004, no pet.) ................................................................................ 20

*City of Austin v. Houston Lighting & Power Co.,*
844 S.W.2d 773 (Tex. App–Dallas 1992, pet. denied) .............................. 15

*City of Keller v. Wilson,*
168 S.W.3d 802 (Tex. 2005) ................................................................... 17

*Coastal Transp. Co. v. Crown Cent. Petroleum Corp.,*
136 S.W.3d 227 (Tex. 2004.) ................................................................17

*Commerical Structures & Interiors, Inc. v. Liberty Edu. Ministries, Inc.,*
192 S.W.3d 827 (Tex. App.–Fort Worth 2006, no pet.) ........................9, 12

*David J. Sacks, P.C. v. Haden,*
266 S.W.3d 447 (Tex. 2008) ................................................................10

*E.I. du Pont Nemours and Co. v. Robinson,*
923 S.W.2d 549 (Tex. 1995) ................................................................22

*Felton v. Lovett,*
388 S.W.3d 656 (Tex. 2012) ................................................................21

*Galle, Inc. v. Pool,*
262 S.W.3d 564 (Tex. App.— Austin 2008, pet. denied) ........................ 3, 6

*Gharda USA, Inc. v. Control Solutions, Inc.,*
No. 12-0987, 2015 Tex. LEXIS 432
(Tex. May 8, 2015) ........................................................................ 23-24

*Gibraltar Resources, Inc.,*
211 B.R. 216 (Bkrtcy. N.D. Tex. 1997) ...................................................12

*Goldman v. Olmstead,*
414 S.W.3d 346 (Tex. App.-Dallas 2013, pet. denied) .............................. 18

915635.1    402/122

*G.R.A.V.I.T.Y. Enterps. v. Reece Supply Co.*,
177 S.W.3d 537 (Tex. App. – Dallas Aug. 9, 2005,
no pet.) ...................................................................................... 4

*Green Intern., Inc. v. Solis*,
951 S.W.2d 384 (Tex. 1997) ................................................... 4-6

*Guadalupe-Blanco River Auth. v. Kraft, Davis*,
77 S.W.3d 805 (Tex. 2002) ...................................................... 19

*Guevara v. Ferrer*,
247 S.W.3d 662 (Tex. 2007) ................................................... 24

*Gulley v. Davis*,
321 S.W.3d 213 (Tex. App.–Houston (1st Dist.] 2010, pet. denied) ........... 10

*Hoffman-La Roche, Inc. Zeltwanger*,
144 S.W.3d 438 (Tex. 2004) .................................................... 21

*Holland v. Wal-Mart Stores*,
1 S.W.3d 91 (Tex. 1999) .......................................................... 21

*Houston Unlimited, Inc. v. Mel Acres Ranch*,
443 S.W.3d 820 (Tex. 2014) ............................................... 23-24

*Imperial Lofts, Ltd. v. Imperial Woodworks, Inc.*,
245 S.W.3d 1 (Tex. App.—Waco 2007, pet. denied) ................................... 4

*Intercontinental Group Partnership v. KB Home Lone Star L.P.*,
295 S.W.3d 650 (Tex. 2009) .......................................................5

*Island Recreational Develop. Corp. v. Republic of Texas Savings Ass'n*,
710 S.W.2d 551 (Tex. 1986) ..................................................... 13

*Keller Founds., Inc. v. Wausau Underwriters Ins. Co.*,
626 F.3d 871 (5th Cir. 2010) ............................................... 13-14

*Kingsbery v. Phillips Petroleum Co.*,
315 S.W.2d 561 (Tex. Civ. App.-Austin 1958,

writ ref'd n.r.e.) ........................................................................................ 11

KMG Kanal-Muller-Gruppe Deutschland v. Davis,
    175 S.W.3d 379 (Tex. App.–Houston [1ˢᵗ Dist] 2005, no pet.) ....................19

LMB, Ltd. v. Moreno,
    201 S.W.3d 686 (Tex. 2006) ...................................................................17

Marquis Acquisitions, Inc. v. Steadfast Ins. Co.,
    409 S.W.3d 808 (Tex. App.-Dallas 2013, no pet.) ...................................... 21

MBM Financial Corp. v. Woodlands Operating Co., L.P.,
    292 S.W.3d 660 (Tex. 2009) ...................................................................... 5

McCrea v. Commerce Title Co.,
    No. 04-08-00521, 2009 Tex. App. LEXIS 5597
    (Tex. App.-San Antonio July 22, 2009, no pet.) ......................................... 12

McGinty v. Hennen,
    372 S.W.3d 625 (Tex. 2012) ............................................................... 18, 21

McKinley v. Drozd,
    685 S.W.2d 7 (Tex. 1985) ...................................................................... 2-5

Minnesota Mining and Mfg. Co. v. Nishika Ltd.,
    953 S.W.2d 733 (Tex. 1997) .................................................................... 22

Osbourne v. Jaregui,
    252 S.W.3d 70 (Tex. App. - Austin 2008, pet. denied) ............................. 3-6

Osterberg v. Peca,
    12 S.W.3d 31 (Tex. 2000) ....................................................................... 19

Pape Equip. Co. v. I.C.S., Inc.,
    737 S.W.2d 397 (Tex. App.–Houston [14ᵗʰ Dist.]
    1987, writ ref'd n.r.e.) ........................................................................... 8-9

Reuben H. Donnelley Corp. v. McKinnon,
    688 S.W.2d 612 (Tex. App.-Corpus Christi 1985, writ re'f n.r.e.) ............. 14

915635.1    402/122

*Richey v. Stop N Go Markets of Texas,*
    654 S.W.2d 430 (Tex. 1983) ................................................................... 9, 13

*Seaview Hospital, Inc. v. Medicenters of Am., Inc.,*
    570 S.W.2d 35 (Tex. Civ. App.–Corpus Christi 1978, no writ) ................ 15

*Senn v. Texaco, Inc.,*
    55 S.W.3d 222 (Tex. App.–Eastland 2001, pet. denied) ........................... 13

*State Dept. of Highways v. Payne,*
    838 S.W.2d 235 (Tex. 1992) ..................................................................... 20

*Stewart Title Guar. Co. v. Sterling,*
    822 S.W.2d 1 (Tex. 1991) ......................................................................... 22

*Stone v. Midland Multifamily Equity REIT,*
    334 S.W.3d 371 (Tex. App.–Dallas 2011) ................................................10

*Texarkana Mem'l Hosp. v. Murdock,*
    946 S.W.2d 836 (Tex. 1997) ..................................................................... 22

*Texas Development Co. v. Exxon Mobil Corp.,*
    119 S.W.3d 875 (Tex. App.–Eastland 2003, no pet.) ................................ 14

*Thomas v. Bobby D. Assocs.,*
    No. 12-08-00007, 2008 Tex. App. LEXIS 5881
    (Tex. App. – Tyler Aug. 6, 2008, no pet.) ..................................................... 3

*THPD, Inc. v. Continental Imports, Inc.,*
    260 S.W.3d 593 (Tex. App.–Austin 2008, no pet.) .................................... 19

*University Gen. Hosp., LLC v. Prexus Health Consultants, LLC*
    403 S.W.3d 547 (Tex. App.-Houston [14th Dist.]
    2013, no pet.) ............................................................................................. 22

*Waffle House, Inc. v. Williams,*
    313 S.W.3d 796 (Tex. 2010) ..................................................................... 21

915635.1   402/122

*Westminster Falcon/Trinity L.L.P. v. Shin,*
    No. 07-11-0033-CV, 2012 Tex. App. LEXIS 8833
    (Tex. App.—Amarillo Oct. 23, 2012, no pet.) ........................................... 18

## **Rules**

Tex. R. Evid. 901(a)..........................................................................................14

Tex. R. Civ. P. 274 ...........................................................................................20

Tex. R. App. P. 9.4 ........................................................................................... 26

915635.1    402/122

In the Court of Appeals
For the Third District of Texas at Austin

---

**Elness, Swenson, Graham Architects, Inc.,**

*Appellant,*

**v.**

**RLJ II-C Austin Air, LP, RLJ II-C Austin Air Lessee, LP,
and RLJ Lodging Fund II Acquisitions, LLC,**

*Appellees.*

---

On Appeal from the
200th Judicial District Court of Travis County, Texas
Cause Number: D-1-GN-002325
The Honorable Stephen Yelenosky, Presiding Judge

---

TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:

Appellant Elness, Swenson, Graham Architects, Inc. ("ESG") files this Reply in Support of Appellant's Brief, and shows:

## SUMMARY

It is undisputed that Appellees RLJ II-C Austin Air, LP, RLJ II-C Austin Air Lessee, LP, and RLJ Lodging Fund II Acquisitions, LLC (collectively, "RLJ") did not recover any damages. As a result, RLJ cannot avoid Texas Supreme Court precedent precluding recovery of attorney's fees under Texas Civil Practice and

Remedies Code Chapter 38 ("Chapter 38"). It is also undisputed that RLJ was not a party to the contract underlying its breach of contract claim. Because RLJ did not receive an express assignment of pre-existing causes of action from the previous Hotel[1] owner, South Ausaircourt, L.P. ("South Ausaircourt"), RLJ had no standing or capacity to sue ESG.

The trial court erred in admitting ESG's contract into evidence because RLJ failed to provide an adequate foundation or authentication for admissibility and in submitting a breach of contract question to the jury that included contractual responsibilities outside the scope of ESG's contract.

Finally, the jury's verdict cannot stand because RLJ did not present legally or factually sufficient evidence to support the jury's lost market value damages finding.

## I. The "no net recovery" rule does not apply to credits based on third-party settlements (Issue No. 1).

RLJ argues that the "no net recovery" rule, established by the Texas Supreme Court in *McKinley v. Drozd,* allows RLJ to recover attorney's fees even though RLJ did not recover any damages. Response, 8. RLJ's argument contradicts numerous opinions both from this Court and the Texas Supreme Court.

Under the "no net recovery" rule, a party who prevails on a breach of contract claim, but has damages for that claim completely offset by the other

---

[1] The "Hotel" refers to the Courtyard Austin Airport Hotel located at 7809 East Ben White Boulevard, Austin, Texas. CR:9.

party's counterclaim may still recover attorney's fees under Chapter 38. *McKinley*, 685 S.W.2d at 10-11; *A. D. Willis Co. v. Metal Bldg. Components, Inc.*, No. 03-99-00574, 2000 Tex. App. LEXIS 6812, at *15-16 (Tex. App. Austin Oct. 12, 2000, pet. denied). The "no net recovery" rule does not apply in this case because RLJ's damages were not offset by any counterclaim pursued by ESG. In fact, ESG did not file or pursue any counterclaim. No counterclaim was submitted to the jury. No offset scenario exists here. RLJ settled with another party, so RLJ's damages were paid before the jury issued its verdict.

This Court, in *Osbourne v. Jaregui, Inc.*, directly addressed and refuted RLJ's argument, holding the following:

> the rule that a net recovery is not necessary for a plaintiff to be considered a prevailing party "***does not apply in a case in which a consumer has already received payment of an amount equal to or greater than the damages found by the fact finder*** in the trial of the consumer's case against the non-settling defendant . . . the [Texas Supreme Court in *McKinley*] did not hold that a claim entirely offset by the settlement of that same claim by other defendants could support an award of attorney's fees.

252 S.W.3d 70, 75-76 (Tex. App.—Austin 2008, pet. denied) (citations omitted) (emphasis added). Four months later this Court reversed a trial court's award of attorney's fees where settlement credits exceeded the jury's breach of contract damage award and ordered that the trial court enter a take nothing judgment. *Galle, Inc. v. Pool*, 262 S.W.3d 564, 574 (Tex. App.—Austin 2008, pet. denied).

915635.2   402/122

There is no Texas case holding that RLJ is entitled to attorney's fees under these circumstances. *See e.g., Thomas v. Bobby D. Assocs.*, No. 12-08-00007, 2008 Tex. App. LEXIS 5881, at *4 (Tex. App.—Tyler Aug. 6, 2008, no pet.); *Imperial Lofts, Ltd. v. Imperial Woodworks, Inc.*, 245 S.W.3d 1, 7 (Tex. App.-Waco 2007, pet. denied); *G.R.A.V.I.T.Y. Enterps. v. Reece Supply Co.*, 177 S.W.3d 537, 550-51 (Tex. App.—Dallas Aug. 9, 2005, no pet.); *Buccaneer Homes of Ala., Inc. v. Pelis*, 43 S.W.3d 586, 591 (Tex. App.—Houston [1st Dist.] 2001, no pet.).

RLJ attempts to graft the analysis in *McKinley* to this case, arguing that a jury's **verdict** awarding damages triggers liability for attorney's fees under Chapter 38. Response, 8-10. Under RLJ's theory, a jury's verdict awarding damages entitles the claimant to attorney's fees, regardless of any action that nullifies the damages thereafter. *Id*.

RLJ's theory cannot apply here because the Texas Supreme Court has expressly held that "[t]o recover attorney's fees under Section 38.001, a party must (1) prevail on a cause of action for which attorney's fees are recoverable, ***and (2) recover damages***. *Green Intern., Inc. v. Solis,* 951 S.W.2d 384, 390 (Tex. 1997) (emphasis added). RLJ attempts to discount this precedent by stating that the *Solis* opinion did not refer to *McKinley* (Response, 14, n.11), but *McKinley* simply does not apply where there is no offset resulting from a counterclaim. *Osbourne*,

915635.2   402/122

S.W.3d at 75-76. *Solis* is the law in this state.[2] *See Intercontinental Group P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 652, n.1 (Tex. 2009) (stating that *Solis* provides the definition of "prevailing party" under Chapter 38).

RLJ's proposed rule would also violate Texas Supreme Court precedent where a trial court issues a judgment notwithstanding the verdict. Under RLJ's proposed rule, as long as a claimant follows the presentment procedures in Chapter 38, attorney's fees are recoverable the instant the jury returns a verdict in the claimant's favor. Response, 15-21. RLJ's rule would allow recovery of attorney's fees even after a jury verdict is overturned by a judgment notwithstanding the verdict.

RLJ's argument directly contradicts the Texas Supreme Court's holding in *MBM Financial Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660 (Tex. 2009). There, the jury awarded $1,000 in damages and $150,000 in attorney's fees, but there was insufficient evidence to support the $1,000 damage award. *Id.* at 663, 666. The Supreme Court reversed the damage award and attorney's fees. *Id.* at 666. According to RLJ, the claimant in *MBM Financial* was entitled to attorney's fees despite the insufficient evidence supporting damages. RLJ's argument does not comport with Texas Supreme Court precedent.

---

[2] RLJ's analysis of the legislative history of Chapter 38 and the presence of the word "judgment" in that statute (Response, 9-10), which mirrors the analysis in *McKinley*, cannot contradict precedent set by the Texas Supreme Court.

915635.2   402/122

RLJ also argues that failing to award Chapter 38 attorney's fees in this case would provide a disincentive to settlement during trial. Response, 18-20. However, nothing in Chapter 38 or its legislative history evinces any intent to assist settlements. Indeed, RLJ cites the legislative history, which identifies the effects of attorney's fees on the "losing party" and the "winner." Response, 24. Chapter 38 was not intended to induce settlements, but to provide recompense to a prevailing party. *Id.*; *Solis,* 951 S.W.2d at 390. Texas law clearly establishes that such recompense is not appropriate where, prior to any verdict or judgment, the plaintiff is fully compensated for its damages. *Osbourne*, S.W.3d at 75-76; *Galle*, 262 S.W.3d at 574. The trial court erred in awarding attorney's fees under Chapter 38 because RLJ did not recover any damages.

## II.    RLJ did not receive an assignment of any claims against ESG (Issue No. 2).

### A.    *The PSA[3] did not include an assignment of any causes of action.*

RLJ cannot identify any contractual language expressly assigning pre-existing causes of action against ESG. Response, 25-38. Absent such express language, RLJ argues that the transfer of "intangible assets," an undefined term, constitutes an express assignment. Despite RLJ's textual distortions, it cannot make the agreements at issue include an assignment that does not exist.

---

[3] "PSA" refers to the "New Hotels Purchase and Sale Agreement." CR:606-76.

No dictionary definition or Texas precedent addressing the term "intangible asset" includes causes of action.[4] RLJ conflates the term "intangible asset" with the terms "personal *property* right" and "intangible *property*," attempting to incorporate a meaning of the term "intangible asset" not supported by the contract. Response, 27-34. Contractual terms are given their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used such terms in a technical or different sense. *Birnbaum v. Swepi LP*, 48 S.W.3d 254, 257 (Tex. App.—San Antonio 2001, pet. denied). The term "intangible asset," on its face, does not include "property" or "causes of action." The PSA does not define the term.

The PSA defines the terms "Assets," "Property," and "Personal Property," none of which include pre-existing causes of action. CR:613; 618-19. RLJ turns to the general definition of "property," which includes the "right of possession" or "right of ownership," and argues that the transfer of personal property to RLJ included causes of action. Response, 27-29.[5] However, South Ausaircourt did not

---

[4] RLJ cites bankruptcy cases identifying causes of action as "intangible assets" according to federal law interpreting bankruptcy statutes. Response, 28. These cases do not apply here because federal bankruptcy statutes do not apply to this case. RLJ cannot cite any case in which "intangible assets" associated with the voluntary transfer of property or contracts were held to expressly include causes of action.

[5] RLJ's case law in support refers to intangible "rights," none of which were assigned. *See Adams v. Great Am. Lloyd's Ins.*, 891 S.W.2d 769, 772 (Tex. App.—Austin 1995, not writ) ("a chose in action is an intangible property *right*"); *Browne v. King*, 196 S.W. 884, 887 (Tex. Civ. App.—San Antonio 1917) ("The chose in action is an intangible or incorporeal *right*") (cited in Response, 27).

assign RLJ any "intangible property" or any other property outside of the defined terms identified above. In fact, South Ausaircourt specifically excluded from the sale "all property owned by [South Ausaircourt] or any of its Affiliates not normally located at such Property and used, but not exclusively, in connection with the operation of such Property." CR:615. South Ausaircourt specifically reserved and did not transfer these "Excluded Assets." CR:615; 621.

RLJ argues that the assignment of intangible assets operated as a "Mother Hubbard" clause that assigned all pre-existing causes of action and that the PSA required South Ausaircourt to "cooperate with RLJ to enforce any rights"[6] under ESG's contract. Response, 30. RLJ argues this agreement to "cooperate" in the future proves assignment of all pre-existing causes of action.[7] *Id.* Such linguistic gymnastics fails to reach the platform of intent to assign anything, let alone causes of action, falling flat on its face.

Because RLJ cannot identify any express words of transfer, this argument addresses an *equitable* assignment. Unlike an express assignment, an equitable assignment does not require express words of transfer. *Pape Equip. Co. v. I.C.S., Inc.*, 737 S.W.2d 397, 402 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd

---

[6] RLJ cites numerous portions of the record to support this proposition excluded by the trial court from the summary judgment evidence. Response, 26 (citing CR:602-04); 29 (citing CR:692). As established below, these statements cannot be considered on appeal.

[7] RLJ's contradictory interpretation of ESG's definition of the term "intangible asset" is incorrect and inconsequential. Notably, RLJ does not identify any source that defines "intangible asset" to expressly include causes of action. Response, 28-29.

n.r.e.).  An equitable assignment requires evidence of intent to transfer the interest and the transferor's relinquishment of control over the interest.  *Id*.  RLJ cannot make this argument because it did not plead equitable assignment.[8]  CR:184-202; *Commercial Structures & Interiors, Inc. v. Liberty Edu. Ministries, Inc*., 192 S.W.3d 827, 834 (Tex. App.—Fort Worth 2006, no pet.).

Further, longstanding Texas law requires ***express*** assignment of pre-existing causes of action.  *See Pape Equip.*, 737 S.W.2d at 402-403 (explaining differences between express and equitable assignments); *Richey v. Stop N Go Mkts. of Tex*., 654 S.W.2d 430, 432 (Tex. 1983).  RLJ attempts to distinguish these cases by arguing that they did not address the conveyance of personal property, which RLJ contends includes causes of action.  Response, 32-33.  However, (1) RLJ was not assigned all personal property related to the Hotel, (2) RLJ was not assigned any intangible "property," and (3) the PSA specifically reserved "Excluded Assets." CR:615, 618, 621, 701.  There is no intent discernable from the actual words of the PSA that South Ausaircourt transferred RLJ ***all*** personal property or ***any*** pre-existing causes of action.  Those words are not in the contract.

Lastly, RLJ argues that assignment is confirmed by an affidavit excluded from summary judgment evidence by the trial court.  Response, 34-35.  ESG objected to this affidavit (CR:760-764), which the trial court sustained in a written

---

[8] RLJ did plead equitable subrogation, a different legal theory, but the trial court disposed of that claim by summary judgment, which RLJ did not appeal.

order (CR:1064). The trial court excluded this affidavit based on "violation of the parol evidence and best evidence rules, improper legal and/or factual conclusions," hearsay, and relevance. CR:1064.[9]

RLJ did not challenge the trial court's evidentiary rulings on appeal, precluding this Court from considering the evidence. *Stone v. Midland Multifamily Equity REIT*, 334 S.W.3d 371, 378 (Tex. App.—Dallas 2011). Even if properly before the Court, RLJ's argument only addresses the trial court's exclusion based on the parol evidence rule. Response, 34-35. RLJ's failure to address the trial court's remaining bases for excluding this evidence precludes any potential reversal. *See Gulley v. Davis*, 321 S.W.3d 213, 218 (Tex. App.—Houston [1st Dist] 2010, pet. denied).

RLJ also misconstrues the contours of the parol evidence rule to argue that, because the inadmissible affidavit was authored after the contract, it is outside the rule. Response, 35. The date of authorship is irrelevant—the testimony constitutes evidence seeking to establish an agreement (assignment of causes of action) entered contemporaneously with the PSA.[10] That is parol evidence. *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 451 (Tex. 2008).

---

[9] RLJ also cites, without explanation, affidavit testimony of Carl Mayfield that the trial court excluded. *See* Response, 29 (citing CR:692). Paragraphs 11-13 of RLJ's citation were excluded from the summary judgment evidence. CR:1064.

[10] RLJ's interpretation is a logical fallacy. It would allow parties to introduce extrinsic evidence of any kind, so long as *the evidence* is created after execution of the contract.

915635.2   402/122

RLJ also appears to argue that the alleged assignment was a collateral agreement consistent with the PSA, but that exception cannot apply because the terms in the affidavit vary from the PSA. *Id.* Specifically, the affidavit purports to include an assignment of "tangible and intangible rights" associated with ESG's contract, which were not assigned or addressed by the PSA. CR:603. RLJ's last argument, that ESG does not have standing to assert the parol evidence rule, is belied by RLJ's own authority. *See Baroid Equip., Inc. v. Odeco Drilling, Inc.*, 184 S.W.3d 1, 13-14 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (if used to provide evidence of contractual intent the parol evidence rule "would apply, even though the evidence is being offered by or against a person not a party to the instrument") (quoting *Kingsbery v. Phillips Petroleum Co.*, 315 S.W.2d 561, 571-72 (Tex. Civ. App.—Austin 1958, writ refd n.r.e.)). Because the PSA does not include an assignment of South Ausaircourt's pre-existing causes of action against ESG, the trial court erred in finding that RLJ had standing to pursue its breach of contract claim against ESG.

**B.    *RLJ's alleged invalid assignment of ESG's contract did not convey pre-existing causes of action.***

RLJ also argues that the PSA's introductory clause stating that RLJ "desires" to purchase "right, title, and interest" to the Properties constitutes an express assignment of South Ausaircourt's pre-existing causes of action. Response, 36. It does not. An agreement is not an assignment where there are no ***present*** words of

11

transfer. *Allodial Ltd. v. N. Texas Tollway Auth.*, 176 S.W.3d 680, 683 (Tex. App.—Dallas 2005, pet. denied). The statements by the sellers and purchaser in the PSA regarding the "desire" to purchase "right, title, and interest" to the Properties were contingent on completion of the agreement and did not constitute a "present" transfer of any rights. *Id.*

The Fifth Court in *Allodial* found that a subsequent property owner did not have standing where the agreement stated that the seller "shall assign over to Allodial all rights" to pre-existing causes of action. *Id.* Despite this language, the agreement did not include an express assignment. *Id.* Like RLJ, Allodial argued (including reference to extrinsic affidavit testimony) that the language established a present assignment of rights. *Id.* The Fifth Court "defer[red] to the language of the contract" and found no assignment and no standing. *Id.*; *see also McCrea v. Commerce Title Co.*, No. 04-08-00521, 2009 Tex. App. LEXIS 5597, at *6-8 (Tex. App.—San Antonio July 22, 2009, no pet.); *Commercial Structures*, 192 S.W.3d at 833-34; *In re Gibraltar Resources, Inc.*, 211 B.R. 216, 220 (Bankr. N.D. Tex. 1997) ("A transaction that requires a further act to complete a transfer will not effect an assignment.").

The PSA was undisputedly a preliminary agreement, subject to additional obligations and later closing of the purchase. Response, 4-5. The initial statement regarding "right, title, and interest" to the Properties was not a present transfer of

anything.  South Ausaircourt's subsequent transfer of contracts, leases, and licenses associated with the Hotel confirms this fact.  CR:695-705.  The assignment documents comprise the scope of rights, contracts, and other items assigned and do not include pre-existing causes of action.

RLJ's argument also fails because the "right, title, and interest" language at issue is identical to language found insufficient to transfer causes of action relating to real property.  The Texas Supreme Court in *Richey* found that conveyance of land "together with all and singular the rights and appurtances thereto" did not convey pre-existing causes of action.  *Richey v. Stop N Go Markets of Texas*, 654 S.W.2d 430, 431 (Tex. 1983); *see also Senn v. Texaco, Inc.*, 55 S.W.3d 222, 226-27 (Tex. App.—Eastland 2001, pet. denied).

Finally, even if something in the PSA or ancillary agreements did purport to assign ESG's contract, Texas law enforces anti-assignment provisions and voids assignments in violation.  *See Island Recreational Develop. Corp. v. Republic of Texas Sav. Ass'n*, 710 S.W.2d 551, 556 (Tex. 1986) ("by the terms of the paragraph in question the letter of commitment was not assignable without consent" and "any attempted assignment . . . would be of no force and effect").

RLJ argues that assignment of a contract in the face of an anti-assignment provision does not void the assignment if it occurs post-performance.  Response, 37-38.  This directly contradicts Texas law.  *See Keller Founds., Inc. v. Wausau*

*Underwriters Ins. Co.*, 626 F.3d 871, 874 (5th Cir. 2010) (Texas law enforces anti-assignment clauses even for assignments made post-performance or loss).

RLJ's only Texas authority, *Reuben H. Donnelley Corp. v. McKinnon*, 688 S.W.2d 612 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.), has never been followed for this proposition and has been distinguished by other Texas courts. *See Texas Dev. Co. v. Exxon Mobile Corp.*, 119 S.W.3d 875, 881 (Tex. App.—Eastland 2003, no pet.) (declining to follow *Donnelley* and holding that the court was bound by the *Island Recreational* decision, among others).

The trial court erred in allowing RLJ to proceed with its breach of contract claim against ESG because the claim was never assigned to RLJ.

## III. RLJ failed to establish evidentiary requisites for admission of the ESG contract (Issue No. 3).

RLJ argues that various pre-trial procedures predetermined the admissibility of the ESG contract, but ignores the actual testimony and evidence offered at trial. Response, 39-41. RLJ could have authenticated the ESG contract via affidavit testimony, or possibly the testimony of its witness, Carl Mayfield. *See* Tex. R. Evid. 901(a). At trial, RLJ did neither and, after the trial court overruled ESG's evidentiary objection, simply entered the contract without proper authentication. RR:V.3, 109:11-110:11. The trial court erred in admitting this unauthenticated evidence.

14                                    915635.2   402/122

## IV. ESG did not agree to warrant or "perform" structural engineering services (Issue No. 4).

ESG's contract provided that it would "include" structural engineering services. CR:72 (§2.4.1). RLJ conflates the term "include" with the term "perform," contending that ESG was responsible for the quality of the structural engineering work provided because "reasonable *performance* is implied in every contractual undertaking." *Id*. (emphasis added). The trial court erred in submitting this question to the jury because there is no evidence to support RLJ's contention that ESG contractually agreed to *perform* structural engineering services. ESG agreed to arrange for structural engineering services and satisfied this contractual duty by hiring Marlin, Bridges & Associates ("MBA") as an independently-contracted structural engineer. This fact is not disputed.

RLJ misconstrues the purpose of ESG's citation to *Seaview Hosp., Inc. v. Medicenters of Am., Inc.*, 570 S.W.2d 35, 39-40 (Tex. Civ. App.—Corpus Christi 1978, no writ), which was to identify the difference between "including" and "performing" services. Response, 48-50. Inclusion of services provided via an independent contractor does not impose an implied duty of skill and care on the party including (as opposed to "performing") the services. *See City of Austin v. Houston Lighting & Power Co.*, 844 S.W.2d 773, 789 (Tex. App.—Dallas 1992, pet. denied). Contracting with an engineer to perform those services satisfied ESG's contractual duty, regardless of any failure to perform by the engineer. *Id*.

15

The gravamen of ESG's issue is that RLJ failed to present any evidence that ESG violated its contract because (1) it is undisputed that ESG did "include" structural engineering services and (2) ESG did not contractually agree to "perform" those services. RLJ presented no evidence that ESG failed to comply with the contractual requirement to "include" structural engineering services and ESG objected to the charge on that basis. RR:V.9, 152. ESG was not required to specially except or otherwise plead this issue because RLJ failed to provide any evidence at trial to support a breach of contract on this basis.[11] Accordingly, the trial court erred in submitting a contract question to the jury outside of the contractual terms at issue in the ESG contract.

## V. The trial court erred in awarding RLJ diminution in value damages because the evidence was legally insufficient (Issue No. 5).

### A. *Mr. Hornsby's ipse dixit is not competent evidence.*

RLJ's only evidence to support its alleged lost market value damages was the irrelevant and unreliable expert testimony of appraiser Paul Hornsby ("Hornsby"). RLJ argues this Court should disregard the deficiencies in Hornsby's testimony and consider only evidence supporting the jury's verdict because Hornsby's testimony included a "scintilla" of factual support. Response, 51. RLJ's own authority holds the contrary, finding that appellate courts are

---

[11] Further, ESG did file a verified denial of liability in the capacity sued. CR:48 ("Defendants deny that Plaintiffs are entitled to recover in the capacity in which they sue").

empowered to consider whether "evidence" supporting a judgment is competent, and throw out the judgment if it is not.

Specifically, the Texas Supreme Court stated "evidence that might be 'some evidence' when considered in isolation is nevertheless rendered 'no evidence' when contrary evidence shows it to be incompetent." *City of Keller v. Wilson*, 168 S.W.3d 802, 812 (Tex. 2005) (cited in Response, 51). Hornsby's mere *ipse dixit* is not competent evidence that can support a judgment. *See LMB, Ltd. v. Moreno*, 201 S.W.3d 686, 688-89 (Tex. 2006); *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 231-33 (Tex. 2004).

### B.     *RLJ provides no legal basis for the legally insufficient appraisal date.*

RLJ asserts Hornsby's opinion concerning the Hotel's alleged impaired and unimpaired values as of August 31, 2010 (the "Appraisal Date") complied with applicable appraisal standards. Response, 52-53. RLJ ignores that the appraisal in this case must support recovery of **breach of contract** damages. To be relevant, Hornsby's opinions on market value had to be based on applicable legal standards. *See Birchfield v. Texarkana Mem'l Hosp.*, 747 S.W.2d 361, 365 (Tex. 1987) (stating that expert opinion must be based on "relevant issues" and "proper legal concepts").

In determining lost market value damages for breach of a contract related to real estate and improvements, "the measure of damages is the difference between

915635.2   402/122

the contract price and the property's market value *at the time of the breach*."

*Barry v. Jackson*, 309 S.W.3d 135, 140 (Tex. App.—Austin 2010, no pet.) (emphasis added); *see also McGinty v. Hennen*, 372 S.W.3d 625, 628 (Tex. 2012); *Goldman v. Olmstead*, 414 S.W.3d 346, 361 (Tex. App.—Dallas 2013, pet. denied).[12]

Based on the nature of RLJ's breach of contract claim, the relevant date for measuring any lost market value damages is the date the Hotel was completed. *Barry*, 309 S.W.3d at 141; *see also Westminster Falcon/Trinity L.L.P. v. Shin*, No. 07-11-0033-CV, 2012 Tex. App. LEXIS 8833, at *2, 8-9 (Tex. App.—Amarillo Oct. 23, 2012, no pet.) (mem. op.). Use of that date was "essential to the damages calculation" in determining lost market value damages. *Barraza v. Koliba*, 933 S.W.2d 164, 170 (Tex. App.—San Antonio 1996, writ denied). Instead of using that date, however, Hornsby used an arbitrary date several years *after* completion of the Hotel.[13] *See* Opening Brief, 39. As a consequence, Hornsby's market value opinions are not relevant to RLJ's legal claim to recover damages, and cannot support the Final Judgment in this case. *See McGinty*, 372 S.W.3d at 628-29.

---

[12] RLJ asserts that cases involving sales of real estate should not be applied to this case, but offers no legal authorities to support that assertion or to justify Hornsby's use of the Appraisal Date in this case.

[13] At trial, Hornsby testified the Appraisal Date was chosen primarily because it coincides with the first date Hornsby happened to inspect the Hotel after RLJ retained him to provide expert testimony in this case. RR:V.7, 124-25.

18

**C.** *Two wrongs don't make a right: RLJ's improper Appraisal Date is not cured by submission of an improper jury question.*

Despite the improper Appraisal Date, RLJ argues Hornsby's testimony is admissible because the damages question submitted to the jury used the same improper date. Response, 54-55. Unlike this case, RLJ's supporting authority did not involve inadmissible expert testimony or the use of a date several years after the date required. *See Osterberg v. Peca*, 12 S.W.3d at 55; *THPD, Inc. v. Continental Imports, Inc.*, 260 S.W.3d 593, 608 (Tex. App.—Austin 2008, no pet.).

ESG properly objected to the improper Appraisal Date. RR:V.9, 143:14-145:9-147:13; 153:6-11; CR:1130-37. RLJ asserts that ESG's objection was not sufficiently specific, precluding ESG's challenge to Mr. Hornsby's improper testimony. Response, 54-55. A party complaining about the admissibility of expert testimony fully reserves its right to complain on appeal by filing a motion to exclude the testimony prior to trial. *See Guadalupe-Blanco River Auth. v. Kraft*, 77 S.W.3d 805, 807 (Tex. 2002); *KMG Kanal-Muller-Gruppe Deutschland v. Davis*, 175 S.W.3d 379, 389-90 (Tex. App.—Houston [1st Dist.] 2005, no pet.). That is exactly what ESG did in this case. CR:920-1056. The trial court heard ESG's objections and entered a written order denying ESG's motion to strike Mr. Hornsby's testimony. CR:1082. RLJ cites no authority requiring specific

objections to a *jury question* in order to complain about the admissibility of *expert testimony*.[14]

ESG also objected to the submission of the jury question on damages based on the improper Appraisal Date. Prior to submission of the damages question to the jury, counsel for ESG specifically objected in ESG's motion for directed verdict that Hornsby's market value testimony was improperly "based on the wrong date." RR:V.9, 145:11-13 ("Mr. Hornsby's testimony was lacking in foundation and is based on the wrong date."). ESG's counsel then incorporated that objection in ESG's objection to the damages question, which was based on the Appraisal Date.[15] RR:V.9, 153.

"There should be but one test for determining if a party has preserved error in the jury charge, and that is whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling." *State Dept. of Highways v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992). ESG made its objection to the Appraisal

---

[14] RLJ also argues that ESG failed to submit a question with the proper date. Response, 54. This is incorrect. ESG submitted a question (despite that RLJ bore the burden of proof on this issue) identifying the proper date as "the time and place of ESG's performance." CR:1111.

[15] RLJ appears to incorporate analysis from a First Court of Appeals decision, *C.M. Asfahl Agency v. Tensor, Inc.*, 135 S.W.3d 768, 795-96 (Tex. App.—Houston [1st Dist.] 2004, no pet.), to argue that ESG improperly incorporated its directed verdict arguments into objections to the jury charge. Response, 55. Rule 274 provides that an objection to one part of the **charge** may not be adopted by reference for another part of the **charge**. Tex. R. Civ. P. 274. Nothing precludes the specific references to specific objections in ESG's directed verdict motion issued minutes before the charge objection. Unlike the circumstances in *C.M. Asfahl*, the trial court understood the content of the objection, which is clearly evident in the record. RR:V.9, 145-153.

 915635.2 402/122

Date known from its pre-trial motion to exclude Hornsby's testimony through its motion for directed verdict and objections to the jury charge.

Even if ESG had not objected to the damages question, RLJ cannot recover lost market value damages based on the Appraisal Date because it is several years after any alleged breach. *See McGinty*, 372 S.W.3d at 628-29. Because the jury's answer to the question on lost market value damages as of the Appraisal Date was legally immaterial, no pre-submission objection was even necessary. *See Felton v. Lovett*, 388 S.W.3d 656, 660 n.9 (Tex. 2012); *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 802 (Tex. 2010); *Hoffman-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 450 (Tex. 2004).

### D.  *RLJ did not provide required evidence to support the alleged lost market value of the Hotel attributable to ESG.*

RLJ bore the burden of establishing the damages "resulting" from ESG's alleged breach. *See Marquis Acquisitions, Inc. v. Steadfast Ins. Co.,* 409 S.W.3d 808, 813 (Tex. App.—Dallas 2013, no pet).  Hornsby freely acknowledged, however, that his testimony did not distinguish lost market value allegedly caused by ESG from lost market value caused by other parties whose acts and omissions allegedly resulted in defects to the Hotel. RR:V7, 159-60.

Hornsby's testimony regarding the alleged total loss in market value attributable to *all* contractors does not answer the question of the amount of damages "resulting" from ESG's alleged breach. Because Hornsby's testimony

21

was not "sufficiently tied to the facts of the case that it will aid the jury" in answering the question of what alleged damages are attributable to ESG, it cannot support a judgment for damages against ESG. *See E.I. du Pont Nemours and Co. v. Robinson*, 923 S.W.2d 549, 556 (Tex. 1995).

RLJ cannot support its argument that Hornsby's testimony is still "some" evidence of lost market value damages. Response, 61-62. The court in each authority cited by RLJ actually reversed the judgment in favor of the plaintiff and only used the findings that the non-specific evidence was "some evidence" of damages to justify *remand* instead of *rendition* of judgment in favor of the defendant. *See Minesota Mining and Mfg. Co. v. Nishika Ltd.*, 953 S.W.2d 733, 738-39 (Tex. 1997); *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 12 (Tex. 1991).

Moreover, none of these cases involved a complete absence of competent evidence to support damage claims. *University Gen. Hosp., LLC v. Prexus Health Consultants, LLC*, 403 S.W.3d 547, 555 n.4 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Hornsby's testimony is neither relevant nor reliable, and cannot establish any amount of recoverable lost market value damages with reasonable certainty. *See* Opening Brief, 38-52. *See also University Gen. Hosp.*, 403 S.W.3d at 555, 558.

**E.** ***The determination of lost market value damages requires admissible expert testimony, which RLJ did not provide.***

RLJ also incorrectly argues that expert testimony was not required to prove damages resulting from ESG's alleged breach. Response, 62-63. Without expert testimony regarding alleged lost market value of the Hotel attributable to ESG, the evidence is legally insufficient to support any recovery of such damages. *See Houston Unlimited, Inc. v. Mel Acres Ranch*, 443 S.W.3d 820, 838 (Tex. 2014).

Within the last few weeks, the Texas Supreme Court reaffirmed the well-established principle that "[e]xpert testimony is required when an issue involves matters beyond jurors' common understanding." *Gharda USA, Inc. v. Control Solutions, Inc.*, No. 12-0987, 2015 Tex. LEXIS 432, at *18 (Tex. May 8, 2015). RLJ attempts to argue that juries are often asked to make determinations regarding the proportionate responsibility of multiple parties for injuries in other cases without expert testimony. Unlike finding percentages of proportionate responsibility, a jury's "guess" as to actual and hypothetical values of commercial property is not as good as the determination of a qualified expert. These types of complex and specialized issues are clearly not within the common understanding of typical jurors, and thus require expert testimony. *See, e.g.*, *Gharda USA*, 2015 Tex. LEXIS 432, at *19; *Guevara v. Ferrer*, 247 S.W.3d 662, 669-70 (Tex. 2007). In this case, there is no evidence in the record to support any jury finding on lost market value damages, and this lack of evidence requires a reversal of any award of such damages. *See Houston Unlimited*, 443 S.W.3d at 838.

915635.2   402/122

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellant Elness, Swenson, Graham Architects, Inc. prays that this Court reverse the Final Judgment of the trial court and render a take-nothing judgment in favor of ESG; and for general relief.

Respectfully submitted,

/s/ Weston M. Davis
**Gregory N. Ziegler**
Texas Bar No. 00791985
GZiegler@MacdonaldDevin.com
**Weston M. Davis**
Texas Bar No. 24065126
WDavis@MacdonaldDevin.com
**Steven R. Baggett**
Texas Bar No. 01510680
SBaggett@MacdonaldDevin.com
**MACDONALD DEVIN, PC**
1201 Elm Street
3800 Renaissance Tower
Dallas, Texas 75270
214.744.3300 telephone
214.747.0942 facsimile

**Attorneys for Appellant
Elness, Swenson, Graham
Architects, Inc.**

915635.2   402/122

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that a true and correct copy of the foregoing *Appellant's Reply Brief* was served on all counsel of records in accordance with the Texas Rules of Appellate Procedure via eFiling, on July 16, 2015:

Michael Huddleston
Stephen Gibson
Benton T. Wheatley
Tracy L. McCreight
Jessica C. Neufeld
MUNSCH HARDT KOPF & HARR, P.C.
401 Congress Ave, Suite 3050
Austin, Texas 78701
512.391.6100
512.391.6149 fax

/s/ Weston M. Davis
**Weston M. Davis**

## CERTIFICATE OF COMPLIANCE

Pursuant to Tex. R. App. P. 9.4, I hereby certify that this petition contains 5,558 words. This is a computer-generated document created in Microsoft Word, using 14-point typeface for all text, except for footnotes which are in 12-point typeface. In making this certificate of compliance, I am relying upon the word count provided by the software used to prepare the document.

/s/ Weston M. Davis
**Weston M. Davis**

915635.2   402/122